UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50141-02 |
| versus | JUDGE HICKS |
| CALVIN BRUCE HALL, JR. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Before the court are Defendant's Motions to Suppress Evidence and Statements (Docs. 28 and 29). An evidentiary hearing was held on November 29, 2006. For the reasons that follow, it is recommended that Defendant's motions be denied.

**The Facts**

The evidence at the hearing established the following facts. DEA Task Force Agent Rick Anderson was investigating Yolanda Brown (a co-defendant in this case). On June 9, 2006, Anderson arrested Brown at a Wal-Mart in Shreveport. Brown had on her person several bottles of scheduled narcotics that she admitted stealing from the Wal-Mart pharmacy. Brown told Anderson that she was going to sell the pills to Defendant. Brown agreed to place recorded calls to Defendant to arrange a meeting to distribute the pills to Defendant. The calls were made, and Brown and Defendant agreed to meet at a carwash in Shreveport. Surveillance was set up around the carwash.

When Defendant arrived at the carwash, Brown positively identified Defendant's vehicle. Defendant stopped his vehicle for a moment in the carwash, then drove out of the

carwash and onto the street. Lt. Kevin Dunn was instructed over the police radio to make a traffic stop on Defendant's vehicle. Dunn asked Defendant to step out of his vehicle. At that point, Anderson arrived and advised Defendant of his Miranda rights. Defendant was patted down on the side of the road and was found to have about $1,200 in cash on his person.

Defendant initially behaved as though he had no idea why he was stopped, then Anderson advised him of the existence of the recorded phone calls between Defendant and Brown; that the "gig was up;" and that it was time to cooperate. Defendant then became cooperative. Anderson asked Defendant if he had anything else at his house. Defendant replied that he did not. Anderson then asked Defendant for consent to search his house. Defendant granted verbal consent to a search of his house.

Sgt. Carl Townley was among the first officers to arrive at Defendant's house. He and the other officers secured the location, and then waited for Defendant to arrive. When Defendant arrived, he stated that his brother or roommate had the keys to the house and that he did not have any way to get in touch with them. He told the officers they could use force if necessary to enter the house because he was renting the house anyway. The officers then used a knife or similar object to remove the weatherstripping along a piece of plexiglass in a window next to the back door.

After the officers gained entry into the house, Defendant was interviewed by Agent Michelle Sears and Agent Anderson. Defendant told the agents that he met Yolanda Brown

through a friend named "Poo"; that he had been buying pills from Brown for three or four months; that he bought about 500-600 from Brown at a time; that he paid $1.00 or $1.50 per pill; the he sold the pills for about $2.50 or $3.00 each; and that it would normally take him about three weeks to distribute those pills before he purchased more from Brown. Defendant was very cooperative during the interview. He did not ask for an attorney, nor did he ask that the interview be stopped. During the search of the residence, police found a cell phone bill for Defendant and a Wal-Mart pharmacy work schedule for Brown.

In lieu of Defendant's testimony at the evidentiary hearing, the parties stipulated that, if Defendant were called to the witness stand, he would testify that (1) he was not told of his right to refuse consent to the search of his house; and (2) he was never asked whether he wanted to waive his right to remain silent and answer questions.

**Analysis**

Defendant argues that his statements and his consent to search his residence were not voluntary and were the product of coercive police tactics. Defendant also argues that he did not make a knowing and voluntary waiver of his right to counsel. None of these arguments is supported by the facts.

A consensual search is a well-settled exception to the warrant requirement. <u>United States v. Navarro</u>, 169 F.3d 228, 231 (5th Cir. 1999). In determining whether a search based upon consent is valid, the Government must prove that the search was voluntary and that the defendant consented to the search or consent was obtained from a third party with the ability

to give valid consent. United States v. Jenkins, 46 F.3d 447, 451-452 (5th Cir.1995). In determining whether a consent to search is voluntary, the Fifth Circuit reviews several factors, no one of which is dispositive. These factors include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. Id.

The evidence shows that Defendant freely and voluntarily consented to a search of his residence. While Defendant gave consent to the search while he was detained on the side of the road and in the presence of numerous officers, he was not pressured to consent and no coercive procedures were employed. Defendant claims he was not made aware of his right to refuse consent to the search. However, after Defendant was advised of his Miranda rights and told about the tape recorded conversations, Defendant became very cooperative with the agents. Defendant was apparently confident that no pills or other incriminating evidence would be found at his residence. Considering the totality of the circumstances, Navarro, 169 F.3d at 231, Brown's consent to search his residence was given voluntarily and freely.

The evidence also shows that Defendant's statements were voluntarily made. A confession is voluntary if it is the product of the defendant's free and rational choice; it is voluntary in the absence of official overreaching either by direct coercion or subtle psychological persuasion. United States v. Bell, 367 F.3d 452, 460-461 (5th Cir. 2004);

United States. v. Mullen, 178 F.3d 334, 341 (5th Cir. 1999). The statement must be voluntarily, knowingly and intelligently made, and the individual confessing must be cognizant of the rights being abandoned and the consequences of doing so. United States v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005).

When the defendant challenges the voluntariness of his confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at trial. United States v. Clay, 408 F.3d 214, 221 (5th Cir. 2005). Voluntariness is evaluated based on the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). See also United States v. Barlow, 41 F.3d 935 (5th Cir. 1994). Factors include the age of the accused, his intelligence and education, advice regarding his constitutional rights, length of detention, repeated and prolonged nature of the questioning and whether physical punishment such as depravation of food or sleep was imposed. Id. No case turns on the presence or absence of a single factor. Id.

Defendant was properly advised of his Miranda rights by Anderson almost immediately after Lt. Dunn made the traffic stop. Defendant understood those rights. His statements were not the result of a prolonged detention or other coercive measures. Defendant was cooperative and freely made statements to the officers. Most, if not all, of his incriminating statements were made in his own home. Under the totality of the circumstances, Defendant's statements were voluntarily made.

Defendant also made a conclusory argument in his motion and brief that he did not make a voluntary waiver of his right to counsel. The evidence does not support that contention. Defendant was promptly and properly advised of his right to counsel, and he freely and voluntarily waived that right and cooperated with the authorities.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motions to Suppress (Docs. 28 and 29) be **denied.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 27th day of December, 2006.

```
                              _____
                              MARK L. HORNSBY
                              UNITED STATES MAGISTRATE JUDGE
```